572 A.2d 1270

In re Irvin H. STEINSAPIR, Deed of Trust.

Appeal of Samuel HOROVITZ, Melvin L. Mallit, Lewis Silver-
board and Albert C. Shapira, being all of the Trustees of
Julius L. and Libbie B. Steinsapir Family Foundation, Acting
in their Representative Capacity on Behalf of said Founda-
tion, Appellants.

Superior Court of Pennsylvania.

Argued Jan. 25, 1990.

Filed April 6, 1990.

Albert C. Shapira, Pittsburgh, for appellants.

Jan I. Medoff, Pittsburgh, for participating parties.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

HESTER, Judge.

In this appeal from a final orphans' court decree, we address whether a trust instrument was amended in accordance with its express provisions. We conclude that the instrument was not amended properly and that appellee, Bernard A. Steinberg, has no right to serve as trustee of the Julius L. and Libbie B. Steinsapir Family Foundation ("Foundation"). We reverse.

Appellee instituted this action for declaratory judgment[1] by petition to the Orphans' Court Division of the Court of Common Pleas of Allegheny County, requesting the court to order him to be seated as trustee of the Foundation. Respondents-appellants, who are the acting trustees of the Foundation, filed their answer to the petition. Thereafter, the orphans' court decided the matter on the pleadings. There are no factual disputes in this action.

Irvin H. Steinsapir, now deceased, created the Foundation for charitable purposes under a declaration of trust and trust agreement dated September 19, 1968. He named himself, Julius Steinberg, and four other individuals as the initial trustees. The trust contains two provisions that are relevant to our determination. The first, paragraph 8, relating to appointment of trustees in the event of a vacancy in the board, provides as follows:

Any vacancy occurring among the six Trustees named herein occasioned by death, resignation, refusal or inability to serve, or in any other manner, shall, at the discretion of the remaining Trustee or Trustees, be filled by the remaining Trustee or Trustees; except that, whenever the number of remaining Trustees is less than three, a vacancy or vacancies shall be filled to bring the number of Trustees to at least three. The remaining Trustee or Trustees may designate a Trust Company to fill a vacancy. In the event that the remaining Trustee or Trustees fail to act within three (3) months after the number of Trustees has dropped to less than three, the vacancy or vacancies shall be filled by the Orphans' Court of Allegheny County to bring the number of Trustees to three, upon application by any of the remaining Trustees. All successor Trustees shall have the same powers and discretions as the original Trustees named herein.

---

1. 42 Pa.C.S. § 7535(3) provides in relevant part that any trustee interested in the administration of a trust may bring a declaratory action to have his rights with respect to the trust determined. That section also provides that the court may determine questions regarding the administration of the trust and the construction of the trust instrument.

Thus, the trust agreement provides for post-vacancy selection of trustees by the remaining trustees. The other relevant provision, paragraph 12, relates to amendment of the trust following the death of the settlor:

> The provisions of this agreement may be modified or supplemented in such respects *only* as may be necessary or advisable *in order to effectuate a more convenient or efficient administration,* or to enable it to qualify as an organization exempt from federal income taxes, the contributions to which may be deducted by the contributors for federal income tax purposes, and bequest to which shall be deductible for federal estate tax purposes. Such modifications *shall be evidenced by a written instrument executed by* the Donor, if alive at the time, and *the Trustees....*

(Emphasis added).

On June 5, 1985, the board of trustees held a meeting wherein they decided to pre-select their own replacements. The minutes of the meeting, a copy of which was attached to the petition, indicates the following. One of the trustees reported on a seminar for tax-exempt organizations that he had attended. At the seminar he had learned that "[t]rustees of a private charitable foundation who *have the authority* to do so under the by-laws, may provide that each Trustee may designate his successor in the event of death or incompetency." Reproduced Record at 14a (emphasis added). Without examining whether they had the power to do so under the trust agreement, each trustee designated a successor for himself. At the meeting, appellee was named as successor trustee to Julius Steinberg. Appellee instituted this action to enforce his right to act as trustee when appellants refused to seat him following Julius's death.

The orphans' court granted appellee's petition and seated him as trustee in the Foundation. The decision rests on two legal conclusions. First, the June 5, 1985 resolution naming successors to each trustee operated as a modification of the trust agreement under the terms of paragraph 12. Second, promissory estoppel prevented appellants from refusing to

seat appellee as trustee since the minutes evidence an exchange of promises by the trustees to seat each trustee's named successor. The orphans' court reasoned that since Julius Steinberg relied upon the promise of the remaining trustees to seat his named successor by refraining from attempting to effectuate his wish by other legal means, promissory estoppel prevented appellants from refusing to seat appellee, who is the third party beneficiary of the exchange of promises.

Following the filing of exceptions, the orphans' court en banc affirmed in an equally divided decision. This timely appeal followed. We reverse, finding the well-reasoned opinion of the dissenting members of the court en banc persuasive on the issues presented.

Initially, we discuss our standard of review. As there were no factual determinations made in this case, we are reviewing legal conclusions and interpretation of a trust instrument. Legal conclusions are reviewable freely by the appellate courts. *Presbytery of Beaver–Butler v. Middlesex*, 507 Pa. 255, 266, 489 A.2d 1317, 1323 (1985); *McKeesport Beer Distributors, Inc. v. All Brand Importers, Inc.*, 390 Pa.Super. 627, 630–632, 569 A.2d 951, 953 (1990).

■ We first consider whether the minutes of the June 5, 1985 meeting can be viewed as an effective modification of the trust agreement as provided in paragraph 12.[2] Some basic trust principles are relevant to this determination. First, it is axiomatic that a trust agreement may be mod-

**2.** We note that we are hesitant to entertain the suggestion that the minutes and resolution that are at issue in this case could be considered a trust amendment. The minutes and resolution contain none of the following information which normally is contained in a trust amendment: 1) an indication that the document is intended as a trust amendment; 2) identification of the specific trust that is being amended; 3) indication of the number of previous amendments, if any; 5) recitation of the facts necessary to demonstrate that the amendment complies with the requirements for amendment contained in the trust; 6) indication of the precise section of the trust to be amended; 7) specification of how that section is to be amended; and 8) execution by signature and notarized acknowledgement of the persons or entities empowered to amend the trust.

ified only by *strict* adherence to its express provisions. *In re Trust of Kaufmann,* 460 Pa. 24, 331 A.2d 209 (1975).

In *Kaufmann,* the supreme court held that where a trust agreement provided that amendments by the settlor were effective only if delivered to the trustees, any amendment could not be effective unless actually delivered to the trustees, regardless of the intent of the settlor when he executed the trust amendment. Specifically, the court stated that "Pennsylvania and general trust law clearly provide that a revocable or amendable trust can only be revoked or amended in accordance with the terms of the trust." *Id.* at 28, 331 A.2d at 211. It further advised that evidence of the settlor's "intention to effectuate the proposed amendment cannot be introduced to explain or supercede the unambiguous requirements of the trust agreement." *Id.* at 29, 331 A.2d at 211–12 (footnote omitted).

■ Another trust principle relevant to this case is that the power to appoint trustees is to be strictly construed, and where the settlor has given the power of post-vacancy selection to the board, such power will be erased only reluctantly. *In re Estate of Trimble,* 383 Pa. 443, 119 A.2d 51 (1956); *In re Boning's Estate,* 214 Pa. 19, 63 A. 296 (1906); *see also* Restatement (Second) of Trusts § 108, comment f (power to appoint trustees conferred by the terms of the trust can be exercised only under the circumstances and in manner detailed in the trust).

■ In the present case, the resolution which appellee suggests modified the trust so as to abolish post-vacancy selection fails to meet two requirements of paragraph 12. First, amendments under the paragraph may be made only upon a determination that the amendment improves the administration of the trust. The minutes do not indicate why pre-vacancy selection of a successor by the trustees is better for trust administration. Paragraph 12 clearly states that amendments may be made only if they are more convenient or efficient to trust administration.

Here, the trustees never considered whether the proposed amendment would serve to improve administration of the trust. Thus, regardless of whether the trustees intended to modify the trust, they failed to fulfill the settlor's requirement that an amendment may be made only if determined to be in the best interests of trust administration. *See Estate of Trimble, supra* (courts must give full effect to settlor's intent as expressed in the wording of the trust); *see also* Restatement (Second) of Trusts § 186, comment g (if trust provides that trustee may perform an act only upon the happening of a certain event, the trustee cannot perform act properly unless the event occurs).

Appellee asks us to graft a determination that pre-vacancy selection of successor trustees improves trust administration onto the discussion contained in the minutes of the June 5, 1985 meeting. He suggests that pre-vacancy selection is more efficient since it eliminates all temporary vacancies in the board of trustees. It would be improper for us to ex post facto engraft a determination required by the trust agreement prior to amendment when the trustees failed to do it.

Furthermore, we find flawed appellee's position that this trust's administration is improved by pre-vacancy selection. Our review of the trust agreement convinces us that a temporary vacancy on the board would not interrupt operations since the board is large and the settlor adequately provided for temporary vacancies. In fact, as this litigation demonstrates, pre-vacancy selection has interfered significantly with the operation of the trust. This case provides the very illustration to disprove the conclusion that for purposes of this trust, pre-vacancy selection of trustees is more efficient.

The post-vacancy selection procedure adopted by the settlor prevents discord among the trustees by ensuring that they unanimously select someone who is compatible. By seating appellee against the unanimous wishes of the current trustees of the Foundation, the orphans' court has created an antagonistic situation which is intolerable. If we

sustain appellee's appointment to the board, future meetings will be marred by discord and rejection of appellee's input, and the trust will be left with the commensurate loss of input from the trustee who would be seated instead of appellee.

*In re Zerbey's Estate,* 356 Pa. 2, 50 A.2d 681 (1947), provides guidance in this respect. On the basis of the orphans' court opinion, the supreme court affirmed that court's decree dismissing exceptions to the appointment of a trustee and refusing to seat the exceptant, who was a beneficiary of the trust, as trustee. The orphans' court offered, among others, one significant reason for refusing to appoint the exceptant: potential interference with smooth operation of the board of trustees. The orphans' court in *Zerbey's Estate* noted that by the exceptant's own admission, her appointment would create disharmony on the board. It determined that "we should not and will not pursue a course which is not for the best interests of the trusts or which will create disharmony in the board of trustees." *Id.,* 356 Pa. at 4, 50 A.2d at 682.

■ We conclude that a court must consider the potential impact on an operating board of trustees when it is examining a situation involving appointment of trustees. The orphans' court in this case should have considered the obvious antagonism toward appellee felt by this board, which so rigorously has fought his appointment. This consideration is particularly significant here since appellee fails to offer any compelling reason, either in terms of his qualifications or in terms of a stated preference of the settlor as to particular type of trustee, why he should be appointed instead of someone who will be compatible with the present board.

■ We also believe that the minutes fail to conform to the another requirement of paragraph 12. Paragraph 12 requires amendments to be "executed." It is not disputed that the resolution never was signed by the trustees. Further, no one ever was seated as successor under the resolution. Execution envisions either actual signature by all

parties or that the instrument be carried out in some manner. Black's Law Dictionary defines execution as the carrying out of an act or course of conduct to completion or into operation or effect. Accordingly, we determine that the resolution remained executory at the time of Julius's death since it was unsigned and since appellee is the first person to attempt to enforce the declarations contained in the resolution. While we might view a resolution which has been acted upon by the board as "executed," that situation is not before us.

■ As to the second basis for the orphans' court decision, promissory estoppel, we reject application of the doctrine in this instance. We are examining a trust, not a contract, and cannot give effect to an amendment which is invalid under the trust agreement by applying a principle of contract law. The trust agreement provides that it can be amended in a given manner, and the amendment does not conform to it. It therefore is ineffective.

The decree is reversed, and appellee's petition is dismissed. Appellants are directed to fill the vacancy created by the death of Julius Steinberg in accordance with the provisions of paragraph 8 of the trust agreement. Jurisdiction is relinquished.